UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEYUNNA E. TAYLOR

Plaintiff,

v.

GATEWAY PEDIATRIC THERAPY, LLC et al.,

Defendants.

Case No. 24-10770
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [81]**

After being fired in April 2023, Keyunna Taylor filed this *pro se* lawsuit against her former employer, Gateway Pediatric Therapy, and two of her former coworkers, Ghadir Safa and Vicki Nguyen. She sues Defendants for employment discrimination and retaliation under Title VII and the Americans with Disabilities Act. (ECF No. 77.)

Following discovery, Defendants move for summary judgment. (ECF No. 81.) They contend that the discrimination claims were not properly exhausted and that the retaliation claims fail because Taylor did not engage in protected activity. They also point to Gateway's legitimate, non-discriminatory reason for firing Taylor—her poor job performance. Taylor opposes the motion. (ECF No. 83.) The motion is fully briefed and does not require further argument. E.D. Mich. LR 7.1(f)(2).

For the following reasons, the Court GRANTS Defendants' motion for summary judgment.

## I. Factual Summary

Keyunna Taylor worked for Gateway Pediatric, a service provider for children with autism, neurological, and behavior issues, from September 6, 2022, to April 6, 2023. (ECF No. 81-1, PageID.1074.) She was hired as a Business Operations Coordinator, responsible for preparing client service data for private insurance billing, handling invoices, answering billing calls, and tracking payments. (*Id.* at PageID.1074–1076; ECF No. 81-2, PageID.1293.) Taylor is a Black female with asthma and mobility issues. (ECF No. 81-2, PageID.1190–1194; ECF No. 81-4, PageID.1472.)

There were two other Business Operations Coordinators working with Taylor: Defendant Ghadir Safa, a Middle Eastern female, and Brooke Ellis, a Black female. (ECF No. 81-1, PageID.1074-1076.) Each coordinator was responsible for handling insurance billing and payment duties, although Taylor handled private insurance claims and the other two handled Medicare claims. (ECF No. 81-1, PageID.1075; ECF No. 81-2, PageID.1186.) One of their most important duties, shared by all coordinators, was to answer calls from the billing line. (ECF No. 81-1, PageID.1047; ECF No. 81-5, PageID.1492.) After each call, the coordinator would log the call on a spreadsheet. (ECF No. 81-1, PageID.1046.) Taylor was also tasked with updating a separate "supervisor spreadsheet" that tracked the provider treating each client. (ECF 81-2, PageID.1185–11857.)

Taylor originally reported to Business Operations Coordinator and Manager, Alexandria Yoo, and Yoo reported up to Defendant Vicki Nguyen, Gateway's Vice

President of Operations. (*Id.* at PageID.1074; ECF No. 81-3, PageID.1439.) When Yoo left the company, the Business Operations Coordinators began reporting to Nguyen. (ECF No. 81-4, PageID.1473.) Nguyen did not hire someone to fill Yoo's position and instead asked Safa, the most experienced coordinator, to allocate the work among the three coordinators. (ECF No. 81-1, PageID.1074.) Because this reallocation increased the workload for Taylor, Nguyen decided to take over Taylor's private insurance submission work two days a week. (*Id.* at PageID.1048.)

It was around January 2023 that Nguyen began noticing performance issues from Taylor. (ECF No. 81-1, PageID.1077.) Safa, a fellow coordinator, told Nguyen that Taylor was failing to keep up with the billing line calls, and addressed this directly with Taylor. (ECF No. 81-4, PageID.1473–1474.) Nguyen spoke with Taylor to "positively coach her about priority setting of competing work duties." (*Id.*) But one month later, Safa notified Nguyen that Taylor had again fallen behind on answering billing line calls. (ECF No. 81-4, PageID.1473–1474; ECF No. 81-1, PageID.1078–1079.) Safa also shared her concerns about Taylor's lack of communication in the Business Coordinator chat. (ECF No. 81-4, PageID.1474.)

On March 27, 2023, Nguyen met with Taylor to discuss her performance. (ECF No. 81-1, PageID.1079; ECF No. 81-2, PageID.1303.) In that meeting, Taylor stated that she was doing her job well but felt Safa micromanaged her. (ECF No. 81-2, PageID.1255–1226, 1353.) Taylor says she drafted an email on March 30, 2023, detailing her complaints against Safa's micromanagement, but she did not send it until after her employment ended. (ECF No. 81-2, PageID.1222, 1356–1358 ("I sent

the email to myself so that I could contemporaneously stamp this moment in time as to what I was experiencing at Gateway."); ECF No. 81-1, PageID.1134.)

On April 4, 2023, Ellis, the other coordinator, raised concerns and frustrations to Nguyen about Taylor's failure to answer phone calls. (ECF No. 81-5, PageID.1494 ("I had become extremely frustrated at Ms. Taylor's continued lack of participation in taking Billing Line calls, her delays in credentialing and her growing disengagement over the preceding several months."); ECF No. 81-1, PageID.1080.)

That same day, Nguyen reviewed the Business Coordinator records and chat communications where she saw long periods of Taylor's inactivity, a very limited number of billing line calls, and supervisor assignments that had not been updated in a month and a half. (ECF No. 81-1, PageID.1081 ("[D]uring the 6-week Billing log period I reviewed, Ms. Ellis entered call notes for 22 calls; Ms. Safa entered call notes for 32 calls and Ms. Taylor entered call notes for 2 calls . . . ."); *id.* ("I read [the Chat communications] as indicating Ms. Taylor's defiance toward Ms. Safa and Ms. Ellis' prompting her to take Billing Line calls, document activity in Chats and requests for assistance."); *id.* at PageID.1101.)

The following day, on April 5, 2023, Nguyen discussed the coordinator chat and billing line logs with Everett James, the Director of Human Resources. (ECF No. 81-1, PageID.1081.) Nguyen and James decided Taylor should be terminated. (*Id.* at PageID.1081–1082.) And Nguyen sent James written documentation of the billing line and coordinator chat after the meeting. (ECF No. 81-1, PageID.1101.) On April

6, 2023, James terminated Taylor's employment. (ECF No. 81-2, PageID.1367, ECF No. 81-3, PageID.1441.)

Taylor felt that termination was unwarranted because "taking calls isn't even on [the job description] list." (ECF No. 81-2, PageID.1367.) She says Safa was "micromanaging" her, even though they were both business coordinators. (*Id.* at PageID.1362.) She also believes that the company handbook required Nguyen to impose progressive discipline before outright termination. (*Id.* at PageID.1192.)

On November 10, 2023, Taylor filed an inquiry with the EEOC, describing comments made by Safa on or around October and December of the previous year:

> Gahdir [sic] would make comments like "you are a little darker than me" or "being that you are older than us all . . ." or "you should take a walk for lunch." I ignored these comments hoping she wasn't attempting to be offensive. Ghadir became very direct & inquisitive about my work activity after our lead resigned. She would send me task & asked what I doing throughout the day. The last task she sent, I couldn't complete. I told her the job I was hired to do is my priority. The next day I was fired & told it was due to productivity. HR(Terrance) could not show how my performance was gauged. Before I was fired I met w/ my manger, Vicki & told her that Ghadir was abrasive/offensive & micromanaging my work. She said, "Ghadir just wants to get things done. She means well." Ignoring my complaint. She did not mention my productivity lacking. I was never written up or counseled. But, the moment I spoke up for myself I was fired.

(ECF No. 81-6, PageID.1526.)

On December 14, 2023, Taylor filed an EEOC Charge of Discrimination noting that she faced "discriminatory comments related to [her] age, disability, and color" by Safa. (*Id.* at PageID.1538.) She also took issue with Safa "assigning additional tasks specifically to [her]" despite not receiving a promotion. (*Id.*) Taylor wrote that she "complained about [Safa's] comments and treatment" to Nguyen at the end of March

2023, but Nguyen "dismissed [her] complaints . . . ." (*Id.*) Taylor noted she was fired shortly thereafter on April 6, 2023, and believes she was "discriminated against by being discharged out of retaliation for engaging in a protected activity . . . ." (*Id.* at PageID.1539.)

On March 4, 2024, the EEOC sent Taylor a right to sue letter. (*Id.* at PageID.1540.) On March 26, 2024, Taylor filed this lawsuit against Gateway Pediatric Services, Nguyen, and Safa. (ECF No. 1.) In her amended complaint, she alleges age, disability, and race discrimination as well as retaliation in violation of Title VII and the ADA. (ECF No. 77.)

**II.**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant (here, Taylor), and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Stated less formally, Defendants are entitled to summary judgment only if no reasonable jury could find in favor of Taylor. *See Anderson*, 477 U.S. at 251–52. The Court must view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party, Taylor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III. Individual Defendants

To start, the Court addresses whether the individual defendants—Safa and Nguyen—are amenable to suit.

"[T]he Sixth Circuit has long held that individual employees cannot be subject to liability under Title VII." *Gravely v. Thiel*, No. 22-01588, 2023 WL 6049323, at *2 (N.D. Ohio Sept. 15, 2023) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)); *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) ("The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII.") (citing *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 405 (6th Cir. 1997)). The same is true under the ADA. *Babb v. Christian Heights Nursing Home*, No. 24-166, 2025 WL 1648369, at *2 (W.D. Ky. June 10, 2025) ("Because an employee's claims under Title VII . . . and the ADA may only be brought against the employer, the Court dismisses Plaintiff's claims against the individual Defendants.") (collecting cases).

Taylor's employer was Gateway—not Safa or Nguyen. Even though they supervised and assigned tasks to Taylor, they were merely Taylor's co-workers, not her employer, and thus cannot be sued under Title VII or the ADA. *See Bangas v. Potter*, 145 F. App'x 139, 141 (6th Cir. 2005) ("Because Wessolek is merely a former employee of the USPS, and cannot be considered Bangas's employer, he cannot be sued under Title VII."). Thus, Safa and Nguyen are entitled to summary judgment on all claims.

## IV. Retaliation Claims

"The ADA and Title VII both prohibit employers from retaliating against employees for enforcing their rights under the Act." *Odell v. Kalitta Air, LLC*, 678 F. Supp. 3d 904, 921 (E.D. Mich. 2023), *aff'd*, 107 F.4th 523 (6th Cir. 2024) (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015)).

Taylor alleges that on March 27, 2023, she complained to Nguyen about Safa "micromanaging" her, only to be fired days later. (ECF No. 83, PageID.1595.) She believes this termination was retaliation for "engaging in a protected activity." (ECF No. 81-6, PageID.1538–1539.)

Since she has no direct evidence of retaliation, the Court employs the *McDonnell-Douglas* burden shifting framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (applying *McDonnell Douglas* to Title VII retaliation claim) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025) (applying *McDonnell Douglas* to ADA retaliation claim). Under that framework, Taylor has the initial burden of establishing a *prima facie* case of retaliation. *Laster*, 746 F.3d at 730. Then the burden shifts to Gateway to "articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* If Gateway satisfies its burden of production, the burden shifts back to Taylor to "demonstrate that [Gateway's] proffered reason was not the true reason for the employment decision." *Laster*, 746 F.3d at 730 (citing *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007)).

### 1. Prima Facie Case

To make out a *prima facie* case of retaliation under Title VII and the ADA, Taylor must establish:

> (1) [s]he was engaged in protected activity,
>
> (2) the employer knew of the exercise of the protected activity,
>
> (3) [s]he was subjected to adverse employment action, and
>
> (4) there is a causal link between the protected activity and the adverse employment action.

*Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (listing elements of Title VII retaliation claim); *Pemberton*, 150 F.4th at 767 (listing elements of ADA retaliation claim). Because "[a] retaliation claim under the ADA uses the same framework as a retaliation claim under Title VII" *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009), the Court will analyze the claims together. *Reeder v. County of Wayne*, 177 F. Supp. 3d 1059, 1081 (E.D. Mich. 2016) (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997)).

Defendants argue that Taylor's retaliation claim fails at the first step because she did not engage in a protected activity. (ECF No. 81, PageID.1063–1065.) For purposes of a retaliation claim, a protected activity is an "action taken to protest or oppose a statutorily prohibited discrimination." *Pemberton*, 150 F.4th at 767 (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Taylor complained to Nguyen about Safa at their March 27, 2023, meeting. In her brief, Taylor asserts that she "disclosed discriminating behavior, bullying and overstepping conduct by coworker Safa." (ECF No. 83, PageID.1595, 1598.) But she

cites nothing in the record verifying this claim. At this stage of the case, Taylor "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)). Indeed, she must "support [her] factual assertions with admissible evidence" and Taylor's "status as a pro se litigant does not alter [this] duty . . . ." *Golden v. Ohio Dep't of Rehab. & Corr.*, No. 22-2125, 2024 WL 4456909, at *3 (S.D. Ohio Oct. 10, 2024) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. App'x 482, 485 (6th Cir. 2010)). Taylor has not done so.

The only evidence Taylor offers to support this assertion is an email she sent to herself on March 30, 2023, detailing her complaints about Safa's micromanagement. (ECF No. 81-2, PageID.1222, 1356–1358 ("I sent the email to myself so that I could contemporaneously stamp this moment in time as to what I was experiencing at Gateway."); ECF No. 81-1, PageID.1134.) But she only sent the email to HR *after* her employment had already been terminated. So the termination could not have been caused by or in retaliation for any complaints in the email.

Plus, the record suggests that Taylor's complaints to Nguyen were largely focused on Safa's management style, not discrimination. (ECF No. 81-2, PageID.1255 ("[Safa] was abrasive, offensive, and micromanaging [her] work[.]").) Nguyen said much of the same in her deposition. (ECF No. 81-1, PageID.1079 ("Ms. Taylor then told me that she felt Coordinator Ghadir Safa was sending her too many chats throughout the day and giving her things to do.").) While "[a] complaint to management about discriminatory employment practices can constitute protected

activity[,]" *Kovacs v. Univ. of Toledo*, 711 F. Supp. 3d 697, 705 (N.D. Ohio) (citing *Jackson*, 999 F.3d at 344–45), a complaint about merely "bad management style and poor communication" does not. *See Singer v. Cricket Commc'ns Wireless Co.*, No. 09-0674, 2010 WL 4312872, at *12 (M.D. Tenn. Oct. 25, 2010) (concluding plaintiff's complaint that manager communicated better with male employees than with her "does not amount to a complaint that [the manager] was discriminating against her *because* of her gender" and thus did not qualify as protected activity) (emphasis in original); *see also Hill v. City of Dayton*, No. 17-334, 2019 WL 5209157, at *11 (S.D. Ohio Oct. 16, 2019) ("Complaints about a supervisor or other general work-related issues that are not based upon membership in a protected class are insufficient to establish protected activity") (citing *Balding-Margolis v. Cleveland Arcade*, 352 Fed. App'x 3, 45 (6th Cir. 2009)).

Taylor's comment about Safa "micromanaging" her was just that—a complaint about "management practices rather than discrimination against a protected class . . . ." *Scheske v. Univ. of Michigan Health Sys.*, 59 F. Supp. 3d 820, 827 (E.D. Mich. 2014) (concluding complaint that manager did not promote plaintiff's job title merely "contest[ed] the correctness of [the manager's] decision . . . not any unlawful employment practice.").

In short, no reasonable jury could find that Taylor engaged in protected activity that could support a retaliation claim.

### 2. Legitimate Non-Discriminatory Reason

Even if Taylor could satisfy a *prima facie* case, the undisputed record clearly supports Gateway's argument that it fired Taylor because of her poor work performance and not because of any protected activity she engaged in. (*See* ECF No. 81-1, PageID.1081 ("[D]uring the 6-week Billing log period I reviewed, Ms. Ellis entered call notes for 22 calls; Ms. Safa entered call notes for 32 calls and Ms. Taylor entered call notes for 2 calls . . . ."); *id.* ("I read [the Chat communications] as indicating Ms. Taylor's defiance toward Ms. Safa and Ms. Ellis' prompting her to take Billing Line calls, document activity in Chats and requests for assistance."); *id.* at PageID.1101; ECF No. 81-4, PageID.1473–1474; ECF No. 81-5, PageID.1494.)

In both retaliation and discrimination cases, "[p]oor performance is a legitimate and nondiscriminatory reason for terminating an employee." *Rayford v. Sisters of Charity of Cincinnati, Ohio*, No. 22-670, 2024 WL 3595430, at *5 (S.D. Ohio July 31, 2024) (citing *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 252 (6th Cir. 2023)); *Perry v. Covenant Med. Ctr., Inc.*, No. 15-11040, 2016 WL 865732, at *6 (E.D. Mich. Mar. 7, 2016) ("Poor performance, as alleged by Defendant, is a legitimate, non-retaliatory reason for terminating an employee."); *Jones v. Potter*, 488 F.3d 397, 409 (6th Cir. 2007) ("Poor job performance, of course, is a perfectly legitimate, legal reason for firing an employee.").

### 3. Pretext

Because Gateway satisfied its burden of production, the burden shifts to Taylor to "demonstrate that [Gateway's] proffered reason for terminating her employment

was pretextual." *Perry*, 2016 WL 865732, at *6. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Technical College*, 698 F.3d 275, 287 n.6 (6th Cir. 2012).

Taylor offers three points on pretext. None persuade. First, she says that "[n]o contemporaneous pre-complaint documentation exists." (ECF No. 83, PageID.1605.) But the record shows that Nguyen received numerous complaints about Taylor's performance and that was the basis for conducting the March 27, 2023, meeting in the first place. *Cf. Feldwisch v. Wormuth*, No. 22-11645, 2024 WL 329138, at *6 (E.D. Mich. Jan. 29, 2024) (finding proffered reason of poor performance had no basis in fact when plaintiff produced evidence of satisfactory and above satisfactory performance throughout her employment). Second, Taylor says "[t]he evidence shows retaliation followed the protected disclosure," (*id.*) but that is a conclusory statement that does not explain why or how Gateway's proffered reason for her termination is not to be trusted. Third, Taylor claims "[a]lleged missed items, identified and given to James only after termination, cannot justify discharge without prior discipline." (*Id.*) On this point, Taylor seems to be arguing that Gateway owed her "progressive discipline before termination" based on her own "opinion" and the company handbook. (ECF No. 81-2, PageID.1192.) But, as an undisputed "at-will" employee, Taylor was not legally entitled to progressive discipline and could be fired for any legal reason. (*Id.* at PageID.1193–1914.); *see also Bergens v. Diverse Concepts, LLC*, No. 25-5169, 2026 WL 768834, at *8 (6th Cir. Mar. 18, 2026) ("An employer's failure to 'follow its progressive-discipline policy' is 'not enough on its own to establish pretext.") (citation

omitted). She also says that the termination was "rushed for managerial convenience" (ECF No. 82, PageID.1605), which seems to be referring to Nguyen's statement that she was close to starting maternity leave and "did not want to leave a new manager with the burden of managing Ms. Taylor's performance." (ECF No. 81-1, PageID.1082.) This also does nothing to call into question Gateway's proffered reason. In fact, it affirms that she was terminated for managerial reasons, not as retaliation for engaging in a protected activity.

Gateway offered a legitimate, non-retaliatory reason for firing Taylor. And Taylor did not persuasively challenge that reason. Thus, Gateway is entitled to summary judgment on the retaliation claims.

## V. Discrimination Claims

The Court turns next to Taylor's discrimination claims. First a procedural issue and then the merits.

### A. Exhaustion

The timely filing of a charge of discrimination with the EEOC is a condition precedent to filing a Title VII lawsuit. 42 U.S.C. § 2000e-5; *Peeples v. City of Detroit*, 891 F.3d 622, 630–31 (6th Cir. 2018). The ADA also has this requirement. 42 U.S.C. § 12117(a). As such, the Court analyzes the Title VII and ADA exhaustion requirements together. *Pemberton*, 150 F.4th at 760 ("[W]e can rely on Title VII and its caselaw to analyze exhaustion in the ADA context.").)

If the alleged unlawful practice occurs in a "deferral state," like Michigan, which has enacted its own laws prohibiting discrimination in employment, a plaintiff

must file a charge with the EEOC within 300 days of the alleged discrimination. *Alexander v. Loc. 496, Laborers' Int'l Union*, 177 F.3d 394, 407 (6th Cir. 1999); *see* Mich. Comp. Laws § 37.2202. "The 300-day period begins to run when 'the employment action at issue is communicated to the plaintiff.'" *Tripp v. Saint Thomas Highlands Hosp., LLC*, No. 23-01105, 2024 WL 2278346, at *4 (M.D. Tenn. May 20, 2024) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001)). "[T]he statutes of limitations for actions predicated upon employment discrimination are triggered at the time when the alleged discriminatory act occurred, and not at the time when the last discriminatory effects have been manifested." *Id.* (citing *E.E.O.C. v. Penton Indus. Publ'g. Co.*, 851 F.2d 835, 837 (6th Cir. 1988)).

Taylor's EEOC Charge alleges that Safa made "discriminatory comments" referring to Taylor's "age, disability, and color" in or around October and December 2022. (ECF No. 81-6, PageID.1538.)

True, these comments were at least 348 days before Taylor filed the EEOC Charge on December 14, 2023. (*See* ECF No. 81-6.) But Taylor's EEOC Charge also mentions that on April 5, 2023, "[Safa] questioned [her] about answering phones, and assigned [her] an elaborate task which was outside of [her] job description, to which [Taylor] agreed to help with after [her] regular tasks were completed." (*Id.*) And Taylor also says she "complained about [Safa's] comments and treatment" to Nguyen and then was "discharged out of retaliation for engaging in a protected activity." (*Id.* at PageID.1538–1539.)

The trouble for Taylor is that, while those more recent comments might be timely, they do not mention discrimination and, instead, seem to pertain only to her retaliation claim. Taylor does not adequately address this problem in her response. In fact, she does not even argue that her discrimination claim is timely. (*See* ECF No. 83, PageID.1605.) Instead, she merely states that her retaliation claim is timely. (*Id.* ("Defendants' statute-of-limitations arguments do not defeat Plaintiff's retaliation claim because the adverse employment action—the April 6, 2023 termination—occurred well within the actionable period and is directly tied to Plaintiff's protected activity six business days earlier.").)

The aspects of Taylor's EEOC Charge that dealt with discrimination were filed too long after those events occurred. Thus, Taylor "los[t] the right to bring the [discrimination] claim." *Pemberton*, 150 F.4th at 760 (finding EEOC Charge with no references to discrimination within the relevant time period does not meet the time requirements for a discrimination claim).

Out of an abundance of caution, however, and because Title VII's administrative exhaustion requirement is not jurisdictional (*see Adamov v. U.S. Bank Nat. Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013)), the Court will also address the merits of this claim.

### B. Direct Evidence

"Intentional discrimination claims under Title VII can be proven by direct or circumstantial evidence." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–649 (6th Cir. 2012).

This is not a strong direct evidence case. Taylor contends that Safa's "bias" against her "influence[d]" the company's decision to terminate her employment. (ECF No. 83, PageID.1606–1607.) She references Safa's comments to her in October and December 2022 that "you are a little darker than me," and "being that you are older than us all . . . ," and "you should take a walk for lunch". (ECF No. 81-6, PageID.1526.) Taylor believes Safa's allegedly biased opinion led Nguyen to terminate her.

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*)). "Such evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007) (quotation marks omitted). This is a high bar. "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age [or race],' satisfy this criteria." *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (quoting *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989)).

The Sixth Circuit has repeatedly held that "'simple teasing' or 'offhand comments, and isolated incidents' do not amount to direct evidence of discrimination under Title VII." *Ozier v. RTM Enters. of Georgia, Inc.*, 229 F. App'x 371, 375 (6th Cir. 2007) (citing *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 561 (6th Cir.

2004)). Safa's comments fall into this camp because they were clearly isolated and merely alluded to Taylor's protected characteristics without reference to any employment decision. *See, e.g.*, *MacEachern v. Quicken Loans, Inc.*, No. 17-1005, 2017 WL 5466656, at *4 (6th Cir. Oct. 17, 2017) (considering coworker's remark that "you and I, we're old school" to be "stray remar[k] that do[es] not constitute direct evidence of discrimination"); *Owen v. GE Aviation,* No. 20-5177, 2021 U.S. App. LEXIS 24903, at *5 (6th Cir. Aug. 2, 2021) (rejecting plaintiff's contention defendant employees' "references to her relatives as 'Bro' and 'Auntie' in her official employee files constitute[d] direct evidence of race and age discrimination" because "these isolated and facially innocuous references do not evince a discriminatory motive."); *Wilder v. Guilford Pharm. Prods., Inc.*, No. 04-1199, 2006 WL 1888757, at *10 (S.D. Ohio July 7, 2006) (finding coworker's comment that pregnant plaintiff has "gotten really big" did not amount to direct evidence of pregnancy discrimination under Title VII).

Plus, "[a]ny discriminatory statements must come from decisionmakers to constitute evidence of discrimination." *Geiger*, 579 F.3d at 620–21 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 550 (6th Cir. 2004)). "Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Id.* (quoting *Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir. 1998)).

It was Nguyen and Everett who made the decision to terminate Taylor, not Safa. (ECF No. 81-1, PageID.1082 ("Mr. James and I made the decision to terminate Ms. Taylor's employment.") (Nguyen declaration).)

So Taylor's discrimination claim cannot proceed under the direct evidence framework.

## C. Circumstantial Evidence

The circumstantial evidence path triggers the *McDonnell Douglas* burden-shifting framework. *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (citing *McDonnell Douglas*, 411 U.S. 792.

Taylor does not develop any argument for circumstantial evidence of discrimination. This includes failing to address a *prima facie* case under either Title VII or the ADA. While Taylor is *pro se*, "[t]he liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Velasquez v. Lewis*, No. 20-00172, 2022 WL 1914072, at *1 (W.D. Ky. June 3, 2022) (citing *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010)).

And irrespective of establishing a *prima facie* case, Taylor's discrimination claim fails on the same pretext analysis as her retaliation claims. Taylor's performance issues presented a legitimate, nondiscriminatory reason for terminating her. And Taylor has done nothing to undermine that rationale.

Thus, Gateway is entitled to summary judgment on the discrimination claims.

## VI. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment as to all claims (ECF No. 81). A separate judgment will issue.

IT IS SO ORDERED.

Dated: August 19, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE